**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff-Appellee,<br><br>  v.<br><br>JUVENILE MALE,<br><br>          Defendant-Appellant. | No.   17-10257<br><br>D.C. No.<br>4:12-cr-01126-CJK-JR-1<br><br>OPINION |

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted July 10, 2018
San Francisco, California

Before:  Susan P. Graber and Richard C. Tallman, Circuit Judges, and Ivan L.R. Lemelle,* Senior District Judge.

Opinion by Judge Ivan L.R. Lemelle, Senior District Judge

LEMELLE, Senior District Judge:

Juvenile Defendant-Appellant D.A.T. appeals the district court's imposition

of a 34-month term of official detention following revocation of Appellant's

juvenile delinquent supervision.  Appellant argues that his term of official

---

*     The Honorable Ivan L.R. Lemelle, Senior United States District Judge
for the Eastern District of Louisiana, sitting by designation.

1

detention exceeded the statutory maximum established in 18 U.S.C. § 5037(d)(5). Because we agree, we vacate the sentence and remand with instructions that the district court order Appellant's immediate release.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In August 2009, when Appellant was 15 years old, he and two other individuals killed R.O. on the Tohono O'odham Nation. Appellant was arrested by tribal authorities and remained in tribal custody until he was transferred to federal custody in June 2012, shortly after the government charged Appellant with first degree murder in a one count information. In January 2013, Appellant reached a plea agreement with the government and pled guilty to second-degree murder, as charged in an amended information. The statutory maximum sentence was five years of official detention. *See* 18 U.S.C. § 5037(c)(2)(A). On April 2, 2013, the district court sentenced Appellant to 28 months of official detention, followed by juvenile delinquent supervision until Appellant's 21st birthday.

Appellant was released from detention on June 25, 2014, at the age of 20. But in November 2014, a warrant was issued for Appellant's arrest because he violated the conditions of his juvenile delinquent supervision. As part of a Juvenile Revocation Disposition Agreement with the government, Appellant admitted to two violations of his juvenile delinquent supervision conditions— commission of various crimes and use of controlled substances. In October 2015,

2

the district court revoked Appellant's juvenile delinquent supervision and sentenced him to nine months of official detention for each violation, to be served consecutively, followed by 42 months of juvenile delinquent supervision.

Appellant was released from detention on July 29, 2016, at the age of 22. In September 2016, a second warrant was issued for Appellant's arrest, again because Appellant violated the conditions of his juvenile delinquent supervision. In April 2017, Appellant admitted to two violations (failure to notify probation of contact with law enforcement and consumption of alcoholic beverages) without a plea agreement. In May 2017, the district court revoked Appellant's juvenile delinquent supervision and sentenced him to 34 months of official detention for each violation, to be served concurrently, with no term of juvenile delinquent supervision to follow. Appellant did not object at the hearing, but timely appealed his sentence.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction over Appellant's revocation proceeding pursuant to 18 U.S.C. §§ 3231 and 5031-5037. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

3

The parties disagree about whether we should review de novo or for plain error. Regardless of which standard applies, the sentence imposed exceeded the maximum permitted by law.[1]

**DISCUSSION**

This appeal presents a question of statutory interpretation. The Federal Juvenile Delinquency Act (FJDA) governs the adjudication of juvenile delinquency in federal courts. *See* 18 U.S.C. §§ 5031-5042. When a district court finds a juvenile to be a juvenile delinquent, the FJDA empowers the district court to impose a term of official detention, followed by a term of juvenile delinquent supervision. *See id.* § 5037(a), (c), (d). The FJDA also empowers the district court to revoke juvenile delinquent supervision if a juvenile violates a condition of supervision, and to impose a new term of official detention. *See id.* § 5037(d)(5). In this appeal, the parties dispute the maximum term of official detention that can be imposed upon revocation of juvenile delinquent supervision when the juvenile

---

[1] *See United States v. Goodbear*, 676 F.3d 904, 912 (9th Cir. 2012) (holding that it is plain error to impose a "sentence [that] exceeds the statutory maximum"); *United States v. Juvenile Male*, 470 F.3d 939, 940-41 (9th Cir. 2006) (reversing juvenile's sentence under plain error review because district court used incorrect statute to sentence juvenile, even though there was no controlling Ninth Circuit precedent on the issue); *United States v. Echavarria-Escobar*, 270 F.3d 1265, 1267-68 (9th Cir. 2001) (applying de novo review to "a district court's construction and interpretation of the Sentencing Guidelines," even though no objection was raised in district court (internal quotation marks omitted)).

4

is more than 21 years old at the time of the revocation proceeding. To resolve this dispute, we must examine § 5037(d)(5) of the FJDA.

Section 5037(d)(5) states:

> If the juvenile violates a condition of juvenile delinquent supervision at any time prior to the expiration or termination of the term of supervision, the court may, after a dispositional hearing and after considering any pertinent policy statements promulgated by the Sentencing Commission pursuant to section 994 of title 18, revoke the term of supervision and order a term of official detention. The term of official detention which is authorized upon revocation of juvenile delinquent supervision shall not exceed the term authorized in section 5037(c)(2)(A) and (B), less any term of official detention previously ordered. The application of sections 5037(c)(2)(A) and (B) shall be determined based upon the age of the juvenile at the time of the disposition of the revocation proceeding. If a juvenile is over the age of 21 years old at the time of the revocation proceeding, the mandatory revocation provisions of section 3565(b) are applicable. A disposition of a juvenile who is over the age of 21 years old shall be in accordance with the provisions of section 5037(c)(2), except that in the case of a juvenile who if convicted as an adult would be convicted of a Class A, B, or C felony, no term of official detention may continue beyond the juvenile's 26th birthday, and in any other case, no term of official detention may continue beyond the juvenile's 24th birthday.

Section 5037(d)(5) references § 5037(c)(2), which provides the maximum term of official detention that may be imposed when "a juvenile [is] found to be a juvenile

delinquent." *Id.* § 5037(c). As relevant here, § 5037(c)(2) initially authorized a five-year term of official detention for Appellant.[2]

Section 5037(d)(5) is not a model of clarity with respect to calculating the maximum term of official detention that can be imposed when supervision is revoked. Relying on the unqualified wording of § 5037(d)(5)'s second sentence, Appellant argues that the duration of previously ordered terms of official detention is always subtracted from the maximum term prescribed by § 5037(c)(2). The government argues that § 5037(d)(5) contains two independent methods for calculating the maximum term of official detention following revocation. Pointing to the last two sentences of the section, the government maintains that juveniles older than 21 do not receive credit for previously ordered terms of official detention. Both interpretations are plausible.[3] Therefore, § 5037(d)(5) is ambiguous. *See United States v. Miranda-Lopez*, 532 F.3d 1034, 1038 (9th Cir. 2008) (providing definition).

---

[2] Appellant's offense would have been a Class A felony if he had been charged as an adult, and the sentencing guidelines range for a similarly situated adult exceeded five years. *See* 18 U.S.C. § 5037(c)(2).

[3] The United States Probation office relied on each interpretation at various times during Appellant's case. Also, the magistrate judge who conducted the admit/deny hearing and the district judge who conducted the revocation proceeding described the maximum term of official detention differently. Whereas the magistrate judge stated that the maximum term of official detention would be reduced by previously ordered terms of official detention, the district judge explained that the maximum term of official detention could extend to Appellant's 26th birthday, without any mention of subtracting previously ordered detention.

"If [a] statute's terms are ambiguous, we may use canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent." *Jonah R. v. Carmona*, 446 F.3d 1000, 1005 (9th Cir. 2006). We conclude that Appellant's construction of § 5037(d)(5) best reflects the structure of the statute and congressional intent, while remaining faithful to the purpose of the FJDA.

## I. Text and Structure

The structure of § 5037(d)(5) suggests that all juveniles receive credit for previously ordered terms of official detention when supervision is revoked. Section 5037(d)(5) is a single paragraph with no subparts or other internal divisions. The paragraph begins with the unqualified statement that a district court "may . . . revoke [a juvenile's] term of supervision and order a term of official detention" when a "juvenile violates a condition of . . . supervision." 18 U.S.C. § 5037(d)(5). The next sentence states, again without qualification, that the term of official detention imposed "shall not exceed the term authorized in section 5037(c)(2)(A) and (B), less any term of official detention previously ordered." *Id.*

But, by its own terms, § 5037(c)(2) applies only "in the case of a juvenile who is between eighteen and twenty-one years old." And the third sentence of § 5037(d)(5) states that the district court must use "the age of the juvenile at the time of the disposition of the revocation proceeding" when applying § 5037(c)(2).

Therefore, § 5037(c)(2) and the first two sentences of § 5037(d)(5) leave a crucial question unanswered: how does a district court revoke supervision when a juvenile is more than 21 years old at the time of the revocation proceeding?  The last two sentences of § 5037(d)(5) answer that question.  Per the penultimate sentence, revocation of supervision is mandatory when juveniles older than 21 commit certain serious violations.  *Id.* (referring to 18 U.S.C. § 3565(b)).  The last sentence instructs the district court to use § 5037(c)(2) to calculate the maximum term of official detention after revocation, even when a juvenile is older than 21 at the revocation proceeding.  *Id.*

As previously discussed, the parties dispute the significance of the last sentence of § 5037(d)(5).  Whereas Appellant argues that the last sentence supplements, but does not displace, the section's first three sentences, the government argues that the last sentence creates an independent method of calculating the maximum term of official detention for juveniles who are over the age of 21 at their revocation proceedings.  The government's argument primarily relies on the definition of the term "juvenile."  The government points to the definitional section of the FJDA, which states that, "for the purpose of proceedings and disposition under th[e] [FJDA] for an alleged act of juvenile delinquency," "a 'juvenile' . . . is a person who has not attained his twenty-first birthday."  *Id.* § 5031.  Based on this definition, the government argues that Appellant was not a

8

"juvenile" at the time of the revocation proceeding and was, therefore, not entitled credit for previously ordered terms of official detention.

But the government's attempt to separate § 5037(d)(5) into its constituent parts runs counter to the natural reading of the statute. Section 5037 repeatedly uses the phrase, "a juvenile who is over the age of 21 years old." *Id.* § 5037(b), (d)(5), (d)(6). This phrase suggests that, at least for purposes of § 5037, a defendant can be a "juvenile" and over the age of 21 at the same time. *See Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2441 (2014) ("[A] statutory term— even one defined in the statute—may take on distinct characters from association with distinct statutory objects calling for different implementation strategies." (internal quotation marks omitted)); *cf. United States v. Olsen*, 856 F.3d 1216, 1223 (9th Cir. 2017) (presumption that statutory definition controls use of term "may yield to context" "[i]f interpreting a term consistently with its statutory definition would, for instance, lead to 'obvious incongruities' or would 'destroy one of the major congressional purposes'" of the statute (alteration omitted)) (quoting *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201 (1949)).

Considering Appellant a juvenile for purposes of § 5037 is also consistent with our analysis in *United States v. LKAV*, 712 F.3d 436, 444 (9th Cir. 2013), where we concluded that juveniles over the age of 21 remain "subject to" the FJDA as long as the district court had jurisdiction when the information was filed.

9

Moreover, the government's proposed construction fails to account for the fact that only the first sentence of § 5037(d)(5) authorizes revocation of supervision and imposition of official detention. If, as the government suggests, the first sentence of § 5037(d)(5) applies only to juveniles who are under the age of 21 at their revocation proceedings, then there would be no statutory authorization to revoke Appellant's supervision. That is certainly not the government's position, and the resulting inability to revoke Appellant's supervision would be an "obvious incongruit[y]" that "destroy[s] one of the major congressional purposes" of the 2002 amendments to the FJDA. *See Lawson*, 336 U.S. at 201; *see also* H.R. Rep. No. 107-685, at 218 (2002) (Conf. Rep.) (explaining that the FJDA was amended to "provide[] authority to sanction a violation of probation when a person adjudicated a juvenile delinquent is over 21 at the time of the violation"). The government offers no persuasive rationale for considering appellant a "juvenile" for purposes of the first sentence of § 5037(d)(5), but not the second.

Appellant's proposed construction is more faithful to the text and structure of § 5037(d)(5) because it explains that the last two sentences of the section supplement the general framework established by the first three sentences of the section. The general framework is that: (1) supervision can be revoked for violating conditions of supervision, and official detention can be imposed upon revocation; (2) the maximum term of official detention is provided by

10

§ 5037(c)(2), subject to reduction for previously ordered terms of official detention; and (3) application of § 5037(c)(2) depends on the juvenile's age at the time of the revocation proceeding. The modifications that apply when a juvenile is older than 21 at the revocation proceeding are: (1) certain serious violations of supervision conditions trigger mandatory revocation; and (2) the maximum term of official detention is provided by § 5037(c)(2), subject to certain age limits.

But simply reading § 5037(d)(5) as a whole, instead of as two independent pieces, does not fully resolve the parties' dispute. The question remains whether the last sentence of § 5037(d)(5) alters the operation of the section's second sentence by implicitly eliminating credit for previously ordered terms of official detention when a juvenile is older than 21 at the revocation proceeding. The last clause of § 5037(d)(5) reads:

> except that in the case of a juvenile who if convicted as an adult would be convicted of a Class A, B, or C felony, no term of official detention may continue beyond the juvenile's 26th birthday, and in any other case, no term of official detention may continue beyond the juvenile's 24th birthday.

This clause appears two other times in § 5037.

In § 5037(b), which governs the revocation of probation, and in § 5037(d)(6), which governs the imposition of juvenile delinquent supervision after revocation of a previous term of supervision, the clause serves to limit the district court's authority to detain or supervise a juvenile. *See id.* § 5037(b), (d)(6).

11

Moreover, in neither instance does the clause create an independent sentencing framework for juveniles over the age of 21. For example, consider a juvenile who was sentenced to three years of probation for a Class A felony at the age of 20. *See* 18 U.S.C. § 5037(b)(2)(A). If that juvenile's probation is later revoked, § 5037(c)(2) allows a period of official detention of five years. *See id.* § 5037(b). But if the revocation proceeding occurs after the juvenile's 21st birthday, the last clause of § 5037(b) limits the term of official detention to end on the juvenile's 26th birthday. The result would be less than five years of official detention. Because the clause limits a juvenile's exposure to detention when used in other parts of § 5037, it should similarly limit a juvenile's exposure to official detention upon revocation of supervision. *See United States v. Maciel-Alcala*, 612 F.3d 1092, 1098-99 (9th Cir. 2010) ("We interpret identical phrases used in the same statute to bear the same meaning," especially when the phrases are in "close proximity.").

Understanding the clause to limit a district court's authority to detain a juvenile is also consistent with the implicit age limits on detention that exist throughout § 5037. Section 5037 consistently rejects control over juveniles after their 24th or 26th birthday, depending on the severity of the underlying conviction. *See* 18 U.S.C. § 5037(b), (c)(2), (d)(2)(B), (d)(6). For example, when a juvenile who committed a class A felony is initially sentenced, he can neither be detained

12

nor supervised after his 26th birthday because the maximum sentence of five years will start no later than his 21st birthday. *See id.* § 5037(c)(2)(A), (d)(2)(B). In fact, under no circumstances does § 5037 allow detention or supervision of a juvenile past his 24th or 26th birthday. *See id.* § 5037(b)-(d). Accordingly, it is not remarkable that § 5037(d)(5) contains a similar limiting provision to ensure that juveniles are not indefinitely detained or supervised under the FJDA.

## II. Legislative History

The authority to order juvenile delinquent supervision, as well as the power to impose a term of official detention upon revocation of that supervision, was added to the FJDA in 2002. *See* Juvenile Justice and Delinquency Prevention Act of 2002, Pub. L. No. 107-273, § 12301, 116 Stat. 1869, 1896-99. The legislative history offers little insight into the specific question presented in this appeal: whether juveniles over the age of 21 receive credit for previous terms of official detention when their supervision is revoked. Admittedly, the legislative history suggests that Congress was concerned about the level of violent juvenile crime when it enacted § 5037(d)(5). *See* H.R. Rep. No. 107-685, at 113-14 (2002) (Conf. Rep.). This concern could support the government's construction of § 5037(d)(5), because the government's construction allows for the imposition of longer terms of official detention for older juveniles. But the conference report only briefly acknowledges § 5037(d)(5), stating that it "(1) provides authority to impose a term

13

of juvenile delinquency supervision to follow a term of official detention, [and] (2) provides authority to sanction a violation of probation when a person adjudicated a juvenile delinquent is over 21 at the time of the violation." *Id.* at 218. Neither provision of authority noted in the conference report suggests a strong intent in favor of the government's construction.

The interpretation of an analogous statute that was in effect when § 5037(d)(5) was enacted may shed more light on Congress's intent. *See Jonah R.*, 446 F.3d at 1007 ("It is a rudimentary principle of construction that statutes dealing with similar subjects should be interpreted harmoniously." (internal quotation marks and alterations omitted)). In the adult criminal justice system, the closest analog to a term of juvenile delinquent supervision is a term of supervised release. *Compare* 18 U.S.C. § 3583(a) *with* 18 U.S.C. § 5037(d)(1). When juvenile delinquent supervision was introduced in 2002, "the circuit courts were in agreement that, when calculating the maximum term of imprisonment to impose upon revocation of a[n] [adult] defendant's supervised release, the district court was required to subtract the aggregate of length of any and all terms of revocation imprisonment from the statutory maximum." *United States v. Knight*, 580 F.3d 933, 937 (9th Cir. 2009).

The text of § 5037(d)(5) appears more generous than the consensus described in *Knight* because § 5037(d)(5) reduces the potential term of official

14

detention upon revocation by "*any* term of official detention previously ordered," not just those ordered during previous revocation proceedings. *See* 18 U.S.C. § 5037(d)(5) (emphasis added). But the government's proposed construction would mean that juveniles older than 21 at their revocation proceedings would get no credit at all, neither for official detention ordered during the initial disposition hearing, nor for official detention ordered at previous revocations.

"[I]t [is] highly unlikely that Congress meant to treat juveniles more harshly than adult offenders" when it enacted § 5037(d)(5). *See Jonah R.*, 446 F.3d at 1010. Congress later amended § 3583 so that adult offenders no longer receive credit for imprisonment related to a prior revocation. *See Knight*, 580 F.3d at 937-38 (citing Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003, Pub. L. No. 108-21, § 101, 117 Stat. 650, 651). But Congress made no such change to § 5037(d)(5). *See* 18 U.S.C. § 5037(d)(5).

### III. Motivating Policies

Finally, the FJDA's purpose cautions against adopting the government's construction. "The FJDA creates a separate system of criminal justice for juveniles to shield them from the ordinary criminal justice system and to provide them with protective treatment not available to adults accused of the same crimes." *Jonah R.*, 446 F.3d at 1010 (internal quotation marks and alterations omitted). "The primary goal of the FJDA is rehabilitative, not punitive; we have thus declared that a least

15

restrictive standard for confinement is implicit in the structure and purposes of the FJDA sentencing provisions." *Id.* (internal quotation marks omitted). "In keeping with its rehabilitative goals, the FJDA disfavors institutionalization and in particular the warehousing of young people away from their communities." *United States v. Juvenile*, 347 F.3d 778, 785 (9th Cir. 2003). Whereas the government's construction would expose juveniles to longer terms of detention, Appellant's construction would help prevent excessive detention of juveniles, furthering the FJDA's purpose.

Also weighing in favor of Appellant's construction is the risk that the government's construction would create constitutional concerns. The government's construction could subject similarly situated juveniles to different maximum terms of official detention based on how promptly each juvenile's revocation proceeding is held. Because the maximum term of official detention is driven by a juvenile's age at the time of his revocation proceeding, a juvenile who violates a condition of supervision before he turns 21 would have a different maximum sentence depending on whether his revocation proceeding occurred before or after his 21st birthday. Disparate treatment of similarly situated defendants triggers equal protection concerns when there is no rational basis for the distinction. *See Jonah R.*, 446 F.3d at 1008; *see also cf. United States v. Stokes*,

16

292 F.3d 964, 968-69 (9th Cir. 2002). "We must interpret statutes to avoid such constitutional difficulties whenever possible." *Jonah R.*, 446 F.3d at 1008.

The FJDA does provide for different maximum terms of detention depending on whether a juvenile was originally sentenced before or after his 18th birthday. *See United States v. Leon H.*, 365 F.3d 750, 753-54 (9th Cir. 2004). But differentiating between juveniles based on when they were originally sentenced is consistent with the language and structure of the FJDA. *See id.* at 752–53. It also "makes sense from a policy perspective," because it avoids a "nonsensical" juvenile sentencing scheme "in which the potential penalty that can be applied decreases as the defendant ages." *Id.* at 753. Here, however, there is no apparent rational basis for granting credit for previous terms of official detention to juveniles who have revocation hearings before their 21st birthdays, but refusing credit to juveniles whose revocation hearings happen after they turn 21. In this context, the period of possible detention is already limited by the juvenile's age because § 5037(d)(5) prohibits extending detention beyond a juvenile's 24th or 26th birthday. Therefore, our holding in *Leon H.* does not assuage our concerns about the constitutional implications of the government's construction of § 5037(d)(5).

**CONCLUSION**

The text and structure of § 5037(d)(5), its legislative history, and the FJDA's motivating purpose support Appellant's construction of § 5037(d)(5). Because Appellant was entitled to credit for "any term of official detention previously ordered," the maximum term of official detention that could have been imposed upon revocation of his juvenile delinquent supervision was 14 months.[4] *See* 18 U.S.C. § 5037(d)(5). Appellant was sentenced to 34 months of official detention. Therefore, Appellant's sentence exceeded the maximum permitted by law. At the end of May 2018, Appellant had been detained for 14 months for the instant supervision violations. We therefore vacate Appellant's sentence and remand with instructions that the district court order Appellant's immediate release. We also order that the mandate issue immediately upon filing of this disposition. *See* Fed. R. App. P. 41.

**VACATED and REMANDED. The mandate shall issue immediately upon filing of this decision. The district court shall order Appellant's immediate release.**

---

[4] The maximum statutory term of official detention is 60 months. *See* 18 U.S.C. § 5037(c)(2). At the time of his second revocation hearing, Appellant had been previously ordered to serve 46 months of official detention (28 months at the original dispositional hearing and 18 months at the first revocation hearing). 60 months less 46 months is 14 months.

18